Counsel for Appellant. Good morning, Your Honors. Tom Goldstein for the appellant. If I could reserve two minutes for rebuttal. All right. After this court ordered the district court to reinstate the verdict, finding that Swisher unlawfully sought to quash us as a competitor, the district court vacated the whole judgment under Rule 60 based on our damages calculation. The district court's first legal error was its holding that Rule 60's only to the close of discovery. And that legal error was dispositive under the court's own findings, specifically the finding that the documents that Swisher possessed before trial would have revealed the excise tax scheme that was at issue. And that finding was clearly correct and can be demonstrated in less than 60 seconds. In the excerpts of record at 132, you can find one of many illustrative excise tax filings by Havana 59 on behalf of Trendsetter for its importation. And each one of those excise tax filings lists a fraudulent first sale price, in the example on 132, of $35,100. And the corresponding actual first sale price is reflected in our expert report, our damages report, at 446, for example, for this excise tax filing, lists a first sale price of $98,000 plus. And so it was apparent to anyone who reviewed those documents, and the district court found this, that the excise taxes had been substantially underpaid, and Swisher easily could have pursued that question. But instead, it elected not to make any arguments at all about excise taxes with respect to our damages calculation. And the district court just was wrong as a matter of law when it held, citing nothing at all, that there is no due diligence obligation when, as here, a party subpoenas documents right before the close of discovery, receives those documents immediately afterwards, albeit after the close of discovery and some seven weeks before trial, and there is no obligation to review the documents. That can't be right. I want to ask you what in those documents, counsel, what in those documents would have alerted Swisher to the fraud, to the excise tax fraud? Yes, Your Honor. Swisher argued, and the district court found, that they would have revealed the fraud, and that was correct. Because what the documents do is show a fraudulent first sale price. In the example I gave you at 132, $35,100, whereas the damages report shows the actual first sale price, what Trend Setup paid to the producer was $98,000. So it listed a first sale price of about one-third, and then it listed an excise tax payment of, in this example, $18,515, when the actual excise payment was due was some $50,000. So all that anyone would have to do is just line up these excise tax filings with what our damages expert says was what we actually paid. And I just can't stress enough the fact that it was Swisher who argued to the district court, and the district court which accepted that if these documents had been in Swisher's possession, the excise tax scheme would have been revealed. The problem was that Swisher told the district court in the first instance that we had prevented it from receiving the documents. It then turned out that that was just not true, that they had had the documents, and then the district court's legal rule for excusing Swisher, despite its previous factual finding about what would have happened, was that there is no due diligence obligation if the documents come in after discovery. Counsel, you said there is no case that supports the district court's ruling. What's the strongest case you have for the opposite proposition? Yes, Your Honor, this court has held with respect to Rules 60B and 60D that the obligation extends through trial. The cases are Sierra Pacific, Casey, and Coastal Transfer. And in fact, the Rule 60B-2 says by its own plain terms that the due diligence obligation extends with respect to anything that was received in time to seek a new trial. That has to be right, and there are no contrary authorities. Because if it's not true, then there is no due diligence obligation even for something that happens at trial. And I could imagine a hypothetical case where there was actually a finding that these specific documents, it was impossible to review them or they were too confusing. There's nothing like that. The district court, for example, allowed post-cutoff depositions. Our final expert report, which has the actual first sale price, came in after these documents. And Swisher does not contend that the district court's factual finding about what would have happened had these documents been disclosed doesn't even argue that it's clearly erroneous. And it is really important to stress how central the due diligence obligation is to Rule 60. You can't have a rule that protects the finality of judgments if you are going to forgive parties from reviewing documents. And remember the timesheets show that Swisher got these documents and its lawyer filed a motion to compel their production saying that excise taxes were central to the case, got the documents, and then spent zero hours reviewing them. And it would be a very dangerous holding of this court to say, nonetheless, okay, it's perfectly fine. They had no obligation to review them whatsoever. We have a second path to reversal here that I should be clear about as well. And that's about the combination of the timing with respect to Section Rule 60B and the intentional misleading of the court under Rule 60D. Before you move to that point, I can take you back to the diligence requirement. Is the requirement identical between 60D and 60B? This court in Sierra Pacific said it wasn't. It is absolutely clear that you cannot have the argument. This court did suggest in Pumphrey that it wasn't and said that, well, even if there was a failure of due diligence, if you intentionally mislead the court, then you still have a 60D violation. Sierra Pacific subsequently comes along and says that's not true. And in any event, and this is my point about Rule 60D, there is nothing approaching intentionally misleading the district court within the meaning of this court's precedence. The district court finds that the lawyers, that we acted in complete good faith, there is no representation to the court about excise taxes. The other side had every incentive to argue that excise taxes should reduce our damages, decided not to do so, decided to focus on other aspects of the case for whatever reason. There's nothing that we said to the district court that misled the district court. Then there is the 60B question about timing, and there's another important legal error that's made here. The district court accepts the legal rule, and you can accept it too, that if an appellate judgment, the first appellate judgment here, is what creates the incentive and the need to file for 60B, because the judgment was otherwise already in favor of the party, then the one-year clock restarts. Fine. That's not what happened here. The other side lost the contract damages in the first trial. Its Rule 60 motion challenges the contract part of the case. It's $14 million. They had that incentive from day one. The appellate judgment in this case did not create in any way, shape, or form the basis for them needing to bring the Rule 60 motion. So there's no reason to hold, and it undermines entirely the one-year requirement, that you don't have to file the Rule 60B motion so long as anything is changed by the appellate judgment. And as here, there was always the need to file for Rule 60B. The one-year requirement exists. That eliminates the Rule 60B holding of the district court, and the Rule 60D holding is in terrible conflict with this court's decisions about what it is to intentionally mislead the district court. Counsel? I see I have two minutes. Sorry. I wanted to ask you, I have Sierra Pacific up, and I want you to point me to the specific language in this case that says the duty of diligence extends to the time of trial. Yes, Your Honor. So there is a discussion of appling in Sierra Pacific.  Yes, Your Honor. I can give you the quote. I'm not sure that I have the pinpoint site, but what it says, and I'll quote it for you, is that a finding of fraud on the court is reserved for material, intentional misrepresentations that could not have been discovered earlier, even through due diligence. There's no cutoff whatsoever. That's a little different than the representation that you made, that the case specifically provides that the duty of due diligence extends to trial. That's a little bit of extrapolation on your part. Let me give you just two more quotes, if I could, Your Honor, because I understand your point. I don't have a case that rejects the argument that something coming after discovery is excluded from the due diligence requirement because no court has ever held it. I'll give you additional language. It appears that no court has expressly addressed that precise point. I do disagree, Your Honor, because the courts in Rule 60D and Rule 60B-3 have applied the same rule as B-2, which is if you could have used it to file a motion for a new trial, if you had it by then. So the other language, just briefly, I don't mean to take up your time unduly, but you have focused on the language. Issues that are before the court or could potentially be brought before the court during the original proceedings could and should be exposed at trial, and allowing parties to raise issues that should have been resolved at trial amounts to collateral attack and undermines the deep-rooted policy in favor of the repose of judgments. And, again, that's the only rule that can make sense. On the other side's rule, under the district court's holding, if you learn something at trial, you have no due diligence obligation to pursue it. That cannot be right. If I could just reserve whatever time is available. Oh, you've exceeded your time, but we'll give you a couple of minutes for rebuttal. Thank you, Your Honor. All right. Response? Thank you, Your Honor. Your Honor, may it please the court, Theodore Boutrous for defendant Swisher. This court should dismiss this case for lack of jurisdiction or if it reaches the merits, affirm, because the district court acted well within its discretion when it granted Swisher a new trial based on the egregious fraud in the court perpetrated by TSI and its CEO and owner, Akram Al-Rahib, whose indictment, confession, and guilty plea for scheming to evade federal excise taxes were all revealed only after the trial and first appeal in 2019. The new evidence revealed that the core theory of TSI's case, that it's lost profits at the hands of a dominant competitor, was a complete and knowing sham. As a result, the district court correctly found that this was an intentional fraud in the court shown by clear and convincing evidence that Swisher acted with diligence. It requested excise tax information during discovery. It wanted to question Al-Rahib at trial. Maybe you can respond to your opponent's point. The documents that he referenced, I took a look at them, and he seems to be right, that if anybody had bothered to spend even a few minutes studying them, could have pieced together that something was amiss, certainly maybe not the full extent of the fraud, but red flags would have been raised and you would have known to probe into that. What's your best response to that argument? A couple points, Judge Watford. First of all, those were fraudulent documents themselves. They were made-up documents that were submitted in discovery. That's part of the fraud on the court, number one. Number two, on their face, they did not reveal that there was a criminal tax evasion scheme. I must say it's pretty audacious for TSI to come to this court and say after duping the jury in the court with Mr. Al-Rahib sitting there knowing he was engaged in this tax evasion scheme, to now say that Swisher should have discovered it. If it was so obvious, then counsel for the plaintiffs should have seen it. I don't think that's an excuse. The district court did not find that the diligence duty ended with discovery. It just found that Swisher did everything reasonable. It did not have to assume that its opponent was engaged in a massive criminal tax fraud scheme. If you look at Hazel Atlas, the seminal Supreme Court decision, the court said there where the party knew before, early in the proceedings, that there was information that this article had been ghostwritten but didn't follow up, but then later found out, years later, the crucial facts like here. In 2019, we found out Mr. Al-Rahib was in a scheme to lower costs through tax evasion to evade federal taxes. He wouldn't have made any profits, wouldn't have been able to import a single cigar in the United States or sell them. He admitted that. He confessed that. I acknowledge that all of those additional details were not disclosed on the face of the documents. You're absolutely right about that. But you don't acknowledge that the documents themselves, as you pointed out, something is amiss. You cannot look at the documents side by side and think, oh, everything's just fine. So at the very least, that's what I say. If your team members had bothered to dig into these documents a little bit, wouldn't people have known, well, we need to ask some questions about this. We need to press further. That's all I'm suggesting. Your Honor, my response is no. The district court found that you would not have been able to determine the fraud based on the information, that the swisher acted reasonably and in good faith. It wanted to question Mr. Al-Rehibi's trial about his excise tax fraud. And I think the Pumphrey v. Thompson tool case is another one on diligence. Where there was some indications of potential misconduct, that did not impose some obligation to go try and ferret out a crime, which was going on here. And Hazel Atlas also points out, this kind of fraud on the court, this was brazen. This first fraud on the U.S. government taxing authorities confessed to. Mr. Al-Rehibi is in prison right now for this. Then he decided to take the trail right into federal court. Why not? Let's get more profits. So he brings it into court, and their expert testified, and it represented over and over again that all costs, and everybody knew the cost of goods included excise taxes, would be gleanable from the records they produced. And, of course, they weren't because they produced fraudulent documents. And Hazel Atlas, yes, Your Honor. Would you agree that the district court never made a finding that there was an intentional misrepresentation made to the court? No, Your Honor, I don't agree with that. Where in the order did the district court make the determination that misrepresentation was intentional as opposed to misleading and misrepresentation? Because fraud on the court requires a finding that it was intentional, and I didn't see that the district court actually made a finding of an intentional misrepresentation. Your Honor, I'll give you one example. Judge Rollins, on page 21 of the excerpts of record, the court said that TSI presented a materially false portrayal of TSI's financial records, costs, profitability, injury, and damages. But that's not enough to have a material misrepresentation under our precedent. The court must find intentionality with that. Otherwise, any perjury or any other misrepresentation could constitute fraud on the court, and we know that's not true. So, to me, the difficulty is the district court never made a finding that the misrepresentations, although material, were intentionally made. Your Honor, the entire case was an intentional falsehood. Mr. Al-Rahid, all his knowledge that the excise taxes were being evaded, that there was no profit, that he couldn't have even sold cigars in the United States, his knowledge, he sat there in the courtroom. He was their star witness. His credibility was crucial. I get that. But Sierra Pacific says that mere nondisclosure evidence is typically not enough to constitute fraud on the court, and perjury by a party or witness by itself is not normally fraud on the court. That's correct, Your Honor, but here the fraud on the court began outside the court with the fraud on the United States government, the blatant criminal fraud, and then it was brought, the trail was brought into court in the words of Hazel Atlas and I believe Sierra Pacific used the same language. And in this kind of case, this isn't just some false testimony. Their entire theory of the case that they were a plucky competitor beaten down by a dominant company and that they would have made more profits. Mr. Al-Rahid knew that wasn't true. So this was a scheme, Your Honor, to defraud the court, to defraud the jury, and it's an injury to the institution. And that's why on the diligence point, if I can just add, Hazel Atlas made this point. This isn't some test of the litigant to see if they did everything possible to ferret out the crime. Plaintiff's lawyers should have ferreted out the crime. If we could have done it, they should have done it. And Hazel Atlas says, when you're protecting the courts, the courts can't just stand there and say, well, they didn't do enough. We're going to let ourselves be defrauded. Judge Selma was there. He knows he was there from start to finish. He presided over this case. He saw what TSI was doing. He ruled in favor of them many times, by the way. And he saw that it was a complete sham that distorted the entire picture before the court. And if I can just go back to jurisdiction here, because this court should not even read these issues. They didn't want to go back for a new trial because they knew a jury in court presented with all this evidence would have found no profits, would have found no antitrust violation, would have found no breach of contract because the entire case was a sham. And under Microsoft, there's no jurisdiction here. This is even more of a gambit in the words of this court in Langare, the post-Microsoft decision, to manufacture jurisdiction. TSI has confessed judgment, voluntarily dismissed, and gave up all of its claims in a judgment. There's a judgment for Swisher on all claims, and that was voluntary. At that point, that does not create appellate jurisdiction. I think you'd obviously be right if Justice Thomas' view in Baker had prevailed, but it didn't, right? And we have pre-Baker precedent that I think allows for the voluntary dismissal of all of one's claims. If you as the plaintiff or prospective appellant are willing to roll the dice and put all your chips on the table, I think our pre-Baker precedent allows that. It did, Your Honor, and this court in Langare said that those decisions had been overruled by Microsoft. And Langare governed. The court in Sparing, following Langare, noted that Langare had found that that entire line of decisions has been overruled. I was on the panel in that case, and I don't think that's what we said. Certainly in the scenario where there's a set review process that Congress has set up, you can't evade that, but I don't think that's what's going on here, is it? Section 1292B, Your Honor, is the exact two-tier discretionary review procedure that Congress set up. Here, TSI sought discretionary review under Section 1292B. This court denied it. It sought mandamus. This court denied it. Now, through this tactical gambit, it is doing exactly what the Supreme Court said in Microsoft could not be done. It's evading that discretionary review process and forcing this court to review. Langare did say, Your Honor, that that line... Well, counsel, I don't think you're going to win an argument when there's a judge on the panel who was on that panel as well. So I wanted to ask you about the fraud on the court. Do you contest whether or not Tran said, as attorneys were aware, of the fraudulent scheme? Your Honor, we have not made that allegation. We were about to embark on discovery. We had a motion for contempt to get more information. So we have not made that allegation at this point. But what I do say, Your Honor, is that if their claim is that Swisher should have known about this information, they sure should have known about it. And on that point, if you look at their... Before we leave that point, before we leave that point, so if the record does not reflect that Tran said, as attorneys, were aware of the fraud, what does that do to your fraud on the argument, fraud on the court argument? It does not change it at all, Your Honor. That wasn't the basis of our motion. Our motion was that Mr. Al-Rahid, the owner and CEO and principal of the company, put into action a plan and scheme first to defraud the federal government  and his company then made intentional false statements over and over again. The court never found them intentional. That's the problem. The court never found those statements to be intentional. The court did, Your Honor. No, it didn't. I asked you to show me where in the order, this record determination, that it used the term intentional. Because that's important for fraud on the court. There has to be a finding that it was done intentionally as opposed to a mere omission or a material misrepresentation that's not intentional. So that's why I asked you that question earlier on about a finding of intentionality. Your Honor, I'll just put it this way. TSI is Mr. Al-Rahid for purposes of this case. Everything he knew was imputed to TSI. TSI went into court and falsely, and intent is imputed as well, falsely stated that it had lost profits because of Swisher. It didn't. It would not have made any profits except for the scheme. And if ever there was a fraud on the court case, this is it. Counsel, if we disagree with you regarding intent being imputed, do you lose on this issue? I don't think so, Your Honor. Your Honor, I think you're focusing on a case where there's maybe one intentional false statement. Hazel Atlas, the Rule 60 case is this court's jurisprudence. And Sierra Pacific also says, in some cases, nondisclosure can be a fraud on the court. And this would be a case where it would be because they sat there knowing that there was this. They who sat there knowing? They who? Mr. Al-Rahid. He said they. That's he sat there knowing. Yes, Your Honor. And that's why I asked you whether or not you had any, if there was anything in the record showing that the attorneys know. So you can't say they sat there knowing because there's no evidence in the record of that. And there's no requirement that the attorneys know, Your Honor. Well, I'm just saying you phrased it that way in support of your argument. There's evidence in the record that other executives at the company, and the district court mentioned this, participated with, and knew about the tax evasion scheme, Your Honor. And plaintiff's counsel introduced. I take it, if I understand your argument, you're saying that if the principal of the company, the guy behind all this, intentionally orchestrated a scheme to deceive the court, which would seem to be uncontestable given his submissions, the fact that the attorneys didn't know he was doing this is neither here or there. Exactly, Your Honor. Well, I don't know if there's evidence that he orchestrated the scheme to defraud the court. He orchestrated a scheme to defraud the government of taxes. That's different than orchestrating a scheme to defraud the court. He then brought an action in court, Your Honor. He was the principal owner of the company. They introduced him. They said he might as well be viewed as the party. They told that to the court and the jury. So if this court's going to excuse a fraud on the court like this, then we're in real problems. This is an abominable, intolerable, as the district court found, breach. This person was defrauding the federal government. He walked into court. His company spoke for him and claimed that they were making all these profits and that they were incurring all these costs. It was a sham. It was a blatant breach, a thumb in the eye of the judicial system. That's what Rule 60 is for. And here, Judge Selma ordered a new trial. It gave him a chance, Judge Rawlinson, to put on an honest case. And the Sierra Pacific, again, Judge Rawlinson, I firmly believe that the entire case, the entire picture put before the court was a knowing falsehood. But if the court is looking for something more specific and disagrees with me, Sierra Pacific, other cases say that if there's nondisclosure, but it's part of a scheme that's meant to injure the institution of the courts, that's a fraud on the court. And it's not just an injury disclosure. It's an injury to Article III courts in general. And I just want to go back to this jurisdiction point, if I may. Counsel, you've far exceeded your time. So if you could wrap up, please. I will. Judge Wofford, this court was very clear in Langear that the line of cases that held that jurisdiction could be manufactured by a voluntary dismissal has been overruled. And the court doubled down on that in the Sparing case. There's no jurisdiction in this case. The court should not reward a fraudulent criminal litigant like this who's exploited the U.S. government. And now the court's to try to steal money from the U.S. government and from Swisher through a fraudulent court. Thank you. Thank you. Let's start with three minutes for rebuttal. Thank you, Your Honors. Let me just make two points. Let me go first to this question of where this scheme was directed. Because Judge Rawlinson is right. My friend says that it was the entire case was a scam. That is not remotely correct. They don't contest their liability, for example. We are here in the public interest pursuing an unlawful scheme to quash a The damages calculation from the very beginning did not include excise taxes as a cost or any other fixed cost. It was just never in the damages calculation. That is the sum total of what's going on here. And they had every incentive from day one to challenge the damages calculation on that basis. They would have, if they wanted to pursue excise taxes, they would have reduced our damages by what was acknowledged to have been excise taxes that were paid. They decided not to put that in the case. They nonetheless claim it's a central issue somehow. Let me just make sure I understand what you're saying. Is it not correct, as the district court found, that your client submitted to the court, as part of its case, false financial records? It is not correct, and I'll explain why. It is not correct? I'll explain why. Even though you were just telling us 10 minutes ago that even the other side should have picked that up through due diligence? Your Honor, let me just explain. I understand exactly what you're saying, what finding you're relying on. It depends on what we mean by false. The documents are accurate. There's a set of documents that accurately shows what it was that Havana 59 paid the government. It shows that those documents, Swisher told the district court, and the district court found, if you had studied those documents at all, as Judge Watford suggests, you will immediately see that there is a gross disparity. So they are false only in the sense that they showed that there was a fraud of the government. But the numbers that are in the documents are entirely accurate. Counsel, did you study those documents? Did your client's attorney study those documents? We didn't have them, Your Honor. That's why they got them in a third-party subpoena. These excise tax documents are Havana 59's filings to the government. The district court said there was no obligation for the other side to read them. Now, to my friend's point that we should have discovered the fraud, what happened here is we submitted an aggressive damages model. It did not include fixed costs. It did not include excise taxes. The other side decided not to challenge it. There is 35 pages of testimony in the entire trial transcript about damages. They decided to fight us on liability. If they had pursued this question at all and decided to make excise taxes an issue, which they had every incentive to, they argued to the district court. And the district court found, and this is at ER 23, this scheme would have been revealed. It's just the district court said there was no due diligence obligation whatsoever. So both of my friend's premises are wrong. This is not the essence of the case in any way. The essence of the case is about liability. This is about a damages model. They say that the excise tax documents show that we would have had no profits. That's the sum total of the argument. But they had the documents before trial that they are now relying on to show that that was true. And it wasn't in any way, shape, or form a central part of our case. And there was nothing at all that was directed at the court. But counsel, I thought there was evidence that Mr. Al Rahib said that there would have never been any ability to compete, but for the excise tax scam. No, there is a sentence in his interview with the government that the other side construes to say that the only way that the other side got to us having no profits is by substituting in our costs to them, as opposed to the cost to our producer. But in any event, your honor, it doesn't matter. What I'm saying is they have a critique of our damages model. Fine. Okay. We completely understand it. Our point is that the district court found that that critique would have been entirely available to them. If they had just looked at the documents they got before trial, that's a finding on page 23. There is nothing in the experts' testimony that is misleading. There's nothing where he says, as my friend says, that all costs are included. The model, what he puts forward as a damages model is very clear. It's just a very, very simplistic model. They decided not to pursue this question. And you cannot say that the district court's factual findings have to be upheld because they're not clearly erroneous when this is the central one and diligence is so important to rule 60. There was, you have never had a rule 60 D case about fraud on the court that doesn't involve perjury or misrepresentation by council. This is the district court is very frustrated. I completely understand that. Okay. But we're talking about a rule of law about the finality of judgments. And this is something where the law says, because we have to preserve the finality of judgments, that if you have the documents in your hand before trial, you have to read them. That's the sum total of our appeal at its essence. Thank you. All right. Thank you. Are there any other questions? All right. Thank you to both council for your helpful arguments in this challenging case. The case just argued is submitted for decision by the court. The next case on.
judges: RAWLINSON, WATFORD, Rakoff